(Superior Court of Cincinnati.)

THE CITY OF CINCINNATI v. THE CINCINNATI INCLINED PLANE R'Y CO.

*Injunction—Power of court to suspend on proper showing—*

A final decree of injunction was entered, with the proviso in the decree that "it is further ordered that the operation of this decree be and the same is hereby stayed for the period of six months from the date hereof, with liberty upon the part of defendant to apply for an extension of said time" and the judgment was subsequently affirmed by the Supreme Court, neither party complaining of the insertion of this proviso in the decree. Held: That after the expiration of said six months, upon a proper showing to the court that it would be inequitable to the defendant not to suspend the operation of the decree, the same may be again suspended for a reasonable time."

---

SMITH, J.

This action was begun on December 12, 1890, to determine the right of the defendant company to further continue the operation of its street cars over the streets of Cincinnati, and to recover a certain amount of money claimed to be due for unpaid license fees.

As to the right to continue the operation of its cars, the contention of the city was that the defendant company had no legal right to continue such operation for the reason, that, as to a large part of its route, its franchise had expired, and that as to the remaining portion of its route, the franchise had been granted to it without authority of law, and was, therefore, illegal and void.

As to its right to recover for unpaid license fees, the contention of the city was that by the terms of the grants, under which the defendant company had operated, it had become liable to pay to the city certain license fees which it had never paid.

The case presenting difficult questions of law was reserved by the judge in Special Term to the General Term of this court, which, after elaborate arguments by counsel, and after having the case under consideration for over a year, decided that the contention of the city, as to the right to further operate the road, was sound; and that its contention as to the right to recover for license fees was partially sound and partially unsound, and that while the defendant company was indebted to the city, it was not indebted to the amount claimed.

The judgment of the General Term was affirmed by the Supreme Court of the State.

Subsequently, certain non-resident bondholders, representing the Louisville Trust Company, began an action in the United States Courts, and the same questions presented to the State Courts were again presented to the Federal courts.

The Federal courts have taken the same view of the rights of the parties that was taken by the state courts, with the exception that the Federal courts were of the opinion that the grant held by the defendant upon Main street between Mulberry and Liberty streets, and the grants upon

Locust and Mason streets, and the grant for a single track upon Auburn street were valid.

The finding of the Federal courts, however, that the grants of certain portions of the route were valid can be of little, if any practical avail to the defendant company, unless it can secure a renewal of that portion of its grant which both state and federal courts have held to be invalid, or unless the company by some means can secure an extension over those streets covered by the invalid grant.

During the proceedings in the United States courts a receiver of the road was appointed, and since that time the road has been, and is now, operated by such receiver.

An application, however, has been made to the United States Circuit Court to discharge its receiver, and this morning the hearing upon that question is to be had, and possibly a decision is to be rendered this morning.

It further appears that during the pendency of the litigation in the United States courts, the Board of Administration has granted to the Cincinnati Street Railway Company, a competing and rival line, the right to extend its tracks over the streets now occupied by this company; and there is reason to believe that in case of the discharge of the receiver by the United States court, the Cincinnati Street Railway Company and the city authorities will proceed to tear up the tracks of this company and to appropriate its route to the use of the latter company.

The decree of injunction entered in this court against the defendant company, enjoining it from further operation of its cars upon the streets of this city, contained this further provision:

"It is further ordered that the operation of this decree be, and the same is hereby stayed for the period of six months from the date hereof, with liberty upon the part of defendant to apply for an extension of said time, to which order staying the operation of this decree, plaintiff excepts."

In view of the probable absorption of its route by the Cincinnati Street Railway Company in case the United States court discharges its receiver, the defendant company, by virtue of the privelege given it under the aforesaid provision of the decree of this court has applied, to this court to grant it a further suspension of the order of injunction, until it may exhaust every honorable means to secure from the city a renewal of the grant found invalid, or an extension of the grants pronounced valid.

The defendant, as a matter of right cannot demand a suspension of the order of injunction; nor the city, as a matter of right, demand that I shall refuse the suspension.

The granting or refusal of the application rests solely in my discretion.

Under these circumstances considerations other than the strict legal rights of the parties must be taken into account.

The ground upon which the defendant bases its appeal for equitable interference is that relying in good faith upon the advice of its counsel that its franchises to a use of the streets was perpetual, it has invested nearly three quarters of a million of dollars in the construction of its road; that in order to raise the necessary funds, it issued $150,000 of preferred stock, and $500,000 worth of bonds, all of which, for full value paid, have passed into the hands of bona fide purchasers; that the city officials, until 1890, never questioned its claim to have a perpetual franchise; and that now, it having been finally determined that its counsel was mistaken in their view of its rights, it should be given a reasonable time in which to appeal to the sense of fairness and justice o

the city officials of Cincinnati to protect its investments by giving it a new grant upon terms that are fair to both parties; and as a pledge of its good faith offers to pay to the city not only the amount found to be due from it to the city for unpaid license fees, viz., from 1877 to 1884, but upon receipt of a new grant also to pay license fees from 1884 up to the present time, for which payment the courts have decided it is not liable.

Considering the magnitude of the investment in this enterprise, and the circumstances under which it was made, it would certainly seem that upon principles of the plainest common justice, the opportunity requested by the defendant should be afforded it, unless there are countervailing equities, not appearing in the facts previously stated by me.

The plaintiff insists that such countervailing equities exist, and strenuously urges me to deny the defendant's application upon the following grounds:

"1. That instead of accepting the decision of this court as a correct exposition of the law governing the relations between the parties, and within six months granted it by the decree of this court, making an effort to adjust its differences, the defendant has continued to litigate the issue between it and the plaintiff through the State courts and the Federal courts, until both courts have decided against it.

Had the questions in this case been of such a character that it could be said that there was no fair ground for a difference of opinion upon them, the continued litigation of these questions from court to court, and the omission within the six months provided in the decree to attempt a settlement of its dispute with the city might properly be urged as an objection to any merciful consideration from a court of equity; because its litigation under such circumstances would be in bad faith, and a court of equity will not give its assistance to one who has acted in bad faith.

But it is known to all familiar with this litigation that the questions involved were not simple and easy of solution; that upon some of the questions the State and Federal courts have differed; that this court itself held the case under consideration for nearly a year before deciding it, and that upon the filing of the petition in error in the Supreme Court of Ohio (and within the six months provided in the decree), that court regarded the questions of so grave a character that it immediately stayed the operation of the decree of injunction until the final hearing of the case.

I cannot see, therefore, that the unwillingness of the defendant to accept the decision of this court as final, and as a basis upon which to make a settlement with the city, was in any way an indication of bad faith upon its part, or that in prosecuting error from this court, and not availing itself of the six months, it was in any sense guilty of such laches as to have forfeited its standing in a court of equity.

2. The second ground upon which the plaintiff asks a refusl of the application is that after the decision of the Supreme Court of the state the defendant sought to adjust its differences with the city, and that as a result of such effort the Board of Administration of Cincinnati made an offer to the defendant company to renew its grant upon conditions which were in every way just and equitable, but that the defendant refused this offer.

It is not necessary to set out here all the terms of that offer. It will suffice to say that it virtually required the construction of a new road. It required the company to take up its tracks and lay new tracks, and to reconstruct the incline plane "to the satisfaction" of the Board. It is stated by counsel for the company that its lowest estimate of the amount required to comply with these conditions would have been $280,000. The company further contends that within a few years it has entirely

reconstructed its incline plane, and that it is in first-class condition, and the requirement that it should reconstruct it was entirely unreasonable.

In the absence of evidence I cannot express a positive opinion as to whether the requirements that the tracks should be taken up and the incline plane reconstructed were reasonable or not. But from my knowledge as a citizen of Cincinnati, of the character of the incline plane, I have a very strong impression that it is not necessary to entirely reconstruct the incline plane, and that such a demand was unreasonable.

But, however that may be, a demand that it should be reconstructed "to the satisfaction" of the board was a demand that no board of directors acting for a corporation could for a moment accede to without a positive violation of their duties as directors. For no one could foresee to what extent such a contract would involve the company.

I am clearly of the opinion, therefore, that the company is not estopped in equity from making the application it now makes upon the ground that the city once made it a reasonable proposition for a renewal of its grant, and that this proposition was rejected.

3. The third ground upon which the plaintiff asks a refusal of the application, is, First—that there is no power in the city to grant a renewal; and, Second—that the only method of extending the grant which the defendant company is seeking to pursue is by application to the Board of Legislation for a right to extend its lines under the steam railway law, and that if such an extension were made, the company would have superior rights in the streets to any other road.

The two propositions are inconsistent. But if there is no power anywhere to renew or extend the grant to the defendant company, then any pretended grant is utterly void, and the city will not be harmed by such a grant. On the other hand, if any method of securing an extension according to law is open to the defendant company, it should have a reasonable time in which to perfect its right. Without now expressing a positive opinion upon the question as to whether there is any method by which the defendant company can secure a renewal or extension, I will say that it is certainly my impression that it is not in such a helpless legal condition as the plaintiff claims, and that the renewal or extension of its grant is a legal possibility.

And if it were true that its application to the Board of Legislation for a grant such as it seeks could not be granted because that board is without power (upon which question I express no opinion, for I have not considered it), such circumstance in the mind of a court should not operate unfavorably to the defendant. The defendant company is struggling for its very life, and those of its bondholders, with the grasp of its rival upon its very throat. Under such circumstances it cannot be expected to proceed with the philosophic calmness and consideration which are required to reach sound conclusions upon controverted questions of law.

I am of the opinion that the third ground upon which the plaintiff asks me to deny the application is not sufficient.

But even if plaintiff's objections were well taken, it would not follow necessarily that the application of the company should be denied. The public living upon the line of this road, and the general public who use the streets for travel, are entitled to consideration quite as much as the immediate parties to this action. To allow the city authorities, in the middle of winter, to tear up several miles of the streets of this city, would be to permit them to create what, in effect at least, would be an intolerable nuisance. If, however, some great public interest were to be subserved, of course the public would be compelled to submit to this inconvenience and annoyance. But what is the public purpose to be subserved? The only purpose that would be subserved would be that of the Cincinnati

Street Railway Company, whose object is to abolish this line and crush out the life of this company.

It is already apparent that I purpose to suspend this order of injunction. The question that naturally arises, then, is: Is the company to be permitted after the period of suspension granted upon this application has expired, to renew its application? My answer is that, speaking for myself as a member of this court, the question whether any future application should be granted, should depend upon the circumstances surrounding the application at the time it is made. The present application is granted for the purpose of enabling the company to make a reasonable proposition to the city for a renewal or extension of its grant. I concede the right of the city to reject such an offer even if reasonable, if it is the city's will to so act. But before I make an order which in effect wipes out this investment of three quarters of a million of dollars, I must be satisfied that such is the city's desire. Who is the city? Not this official or that official, or this board or that board. Officials stand merely as trustees of an express trust. The beneficiaries of the trust are the people, and when I become satisfied that it is the will of the people of this city that this thing shall be done, I shall, of course, submit my judgment to their will. Until I do, I will not.

And I do not believe that if the people of this city understand that there are three-quarters of a million of dollars invested in good faith in a street railroad for the benefit of the city, and invested with the acquiescence of its officials in the claim of the company, made in good faith that its franchise was perpetual, they will permit its representatives to refuse a fair and equitable adjustment of its rights or permit them to turn its route over to a rival corporation without the payment for the same by that corporation of a farthing into the city treasury.

The city has properly asserted and had determined the legal status of the company. But under the circumstances it should not insist on the very letter of the bond. The pride and dignity of this city is and should be such that it cannot afford to deal with this road solely in the legal forum. The demands of the forum in conscience must be listened to and obeyed or the city's fair name will be irretrievably smirched.

The order of the court is that the application for a suspension of the decree of injunction be granted, and that the decree be suspended for a period of six months, with leave at that time to make application for further extension of time.

Miller Outcalt, for the Railroad Company.

Frederick Hertenstein, Corporation Counsel, and J. D. Brannan, for the City.